

John H. Harland Company
Sarah King Bowen
Vice President and General Counsel
Printed Products Division

**VIA RECEIPTED DELIVERY SERVICE AND FACSIMILE**

June 9, 2004

Mr. John Stefanowicz
Senior Counsel
Sovereign Bank
MC 20-536-C01
One Aldwyn Center
E. Lancaster Avenue and Aldwyn Lane
Villanova, Pennsylvania 19085-0608

> RE: Check Products Purchase Agreement (the "Checks Agreement") made and entered into October 7, 2002 by and between John H. Harland Company ("Harland") and Compass Bank ("Compass")

Dear Mr. Stefanowicz:

    We understand that Sovereign Bancorp, Inc., a Pennsylvania corporation ("Sovereign"), and Seacoast Financial Services Corporation, a Massachusetts corporation and the parent corporation of Compass ("Seacoast"), have entered into a definitive Agreement and Plan of Merger dated as of January 26, 2004, as amended by the Amendment to Agreement and Plan of Merger made April 12, 2004 (the "Merger Agreement"). Pursuant to the Merger Agreement, Seacoast will be merged with and into Sovereign, Seacoast's separate corporate existence will cease and Sovereign will be the surviving entity following the merger (the "Merger"). We understand the anticipated effective date of the Merger is during the third quarter of 2004.

    Compass desires that, prior to consummation of the Merger, Harland discuss the Checks Agreement directly with Sovereign. As such, Compass has waived the confidentiality restrictions of the Checks Agreement for the purpose of such discussions. In addition, Harland and Sovereign have entered into a Confidentiality Agreement dated April 14, 2004 for purposes of discussing the Checks Agreement prior to the Merger. Much of the information Harland will provide is extremely sensitive and competitive in nature, and in accordance with our Confidentiality Agreement, we anticipate that each employee or representative of Sovereign will be advised of Sovereign's confidentiality obligations in connection such information prior to receipt of such information.

    For your convenience, the Checks Agreement is attached hereto as Exhibit A. Following are certain provisions of the Checks Agreement that are relevant for purpose of our discussion of the effect of the Checks Agreement in light of the Merger:

> The Checks Agreement is for an initial term of five (5) years ending June 30, 2007 and does not provide for an early termination in the absence of a breach. (§ 1.1)

2939 Miller Road     Decatur, GA 30035     PH (770) 593-5426     FAX (770) 593-5619

**EXHIBIT 4**

2 The Checks Agreement is a requirements contract that extends to "Buyer and all its branches and affiliates." (§2.1)

The Checks Agreement "survive[s] any merger or acquisition by or of either party..." (§14.1)

The Bank Holding Company Act defines "affiliate" as any company that "controls, is controlled by, or is under common control with another company." (12 U.S.C. §1841(k)). Further, pursuant applicable law of the Commonwealth of Pennsylvania and the Commonwealth of Massachusetts (including Chapter 156B, Section 80 of the Massachusetts Business Corporation Law), as a result of the Merger and without further act or deed, all property, rights, powers, privileges, franchises, and duties and obligations of Seacoast shall be taken and deemed to be transferred to and vested in Sovereign and all debts, liabilities, obligations, restrictions, disabilities and duties of each of Seacoast and Sovereign shall be the responsibility of Sovereign.

Applying applicable law to the Checks Agreement, we believe that the Merger will result in a requirements contract between Harland and Sovereign with a term ending June 30, 2007.

We have asked for a meeting between our respective business representatives to discuss the conversion and how best Harland can service Sovereign in the post-Merger environment. We have been requested instead to provide in writing a buyout amount for the Checks Agreement where Harland would continue producing for only the Compass volume through October 15, 2004. In the interests of accommodating your request, the buyout amount is provided below. We do respectfully request that Harland be given an audience with the relevant decision-makers at Sovereign to allow Harland to explain our success in managing similar, large scale check conversions in a post-Merger context.

Following is the calculation of Harland's damages for early termination of the Agreement, (the "Buyout Amount"). The Buyout Amount is calculated in accordance with Georgia law which governs the Checks Agreement pursuant to section 15.8 thereof, in particular under the Uniform Commercial Code for a volume seller's lost profit for a requirements contract. The Buyout Amount includes the volume for the Sovereign branches (determined from publicly available documents) from the effective date of the Merger through June 30, 2007, but takes into account Sovereign's desire to have Harland continue to print for the Compass branches through October 15, 2004. Future acquisitions have not been included in the Buyout Amount. The Buyout Amount is Fourteen Million Two Hundred Sixty-Eight Thousand Two Hundred Ninety-Eight Dollars ($14,268,298).

As mentioned, Harland's preference is to continue printing checks for Sovereign and to schedule a meeting to discuss how Harland can add value to your organization. Please let us know how you would like to proceed. Look forward to speaking with you.

      Yours truly,

      Sarah King Bowen
      Vice President and General Counsel
      Printed Products Division

cc: Randy Butzer, Vice President
   Brian Hoffman, Key Account Executive

**EXHIBIT 4**