# KING & SPALDING LLP

191 Peachtree Street
Atlanta, Georgia 30303-1763
www.kslaw.com

Daniel J. King
Direct Dial: 404/572-3397
Direct Fax: 404/572-5141
dking@kslaw.com

July 21, 2004

**VIA FACSIMILE
AND U. S. MAIL**

John W. Steinmetz
Robinson & Cole LLP
One Boston Place
Boston, MA 02108-4404

    Re:    Compass Bank

Dear Mr. Steinmetz:

    We, along with Piper Rudnick LLP, represent John H. Harland Company ("Harland") in connection with the action that Sovereign Bancorp, Inc. ("Sovereign Bancorp"), Sovereign Bank, Seacoast Financial Services Corp. ("Seacoast"), and Compass Bank for Savings ("Compass Bank") have filed against Harland in Massachusetts. We are in receipt of your letter dated July 20, 2004, in which Compass Bank purports to terminate the Checks Products Purchase Agreement (the "Checks Agreement"), entered into on October 7, 2002, by and between Harland and Compass Bank.

    Please be advised that your letter claiming to terminate the Checks Agreement is of no legal effect with respect to Compass's obligations under the Checks Agreement, and despite the controversy that now exists as a result of the lawsuit that your clients have filed, Harland remains committed to fulfilling its obligations under the Checks Agreement for the full term of that agreement.

    That your July 20 letter does not effect a termination of the Checks Agreement is not subject to any reasonable dispute. The Checks Agreement does not include any right for Compass Bank to terminate the contract for convenience. Rather, it provides that the "Agreement shall be for an initial term . . . of five (5) years beginning July 1, 2002 . . . and shall continue in effect until June 30, 2007." (Checks Agreement § 1). Harland Bank fully intends to honor the Checks Agreement for its full term, and expects Compass Bank (or any successor to Compass Bank) to do the same.

    The only provisions permitting termination are triggered only upon an event of material default. (*See* Checks Agreement § 12). Compass Bank has not notified Harland of any claimed material default by Harland of its performance of any material duties, obligations, or service

**EXHIBIT 6**

ATLANTA • HOUSTON • LONDON • NEW YORK • WASHINGTON, D.C.

John W. Steinmetz
July 21, 2004
Page 2

level required by the Checks Agreement. Even if Compass Bank were now to claim such a default, the Checks Agreement specifically provides a 90 day window following written notice specifically identifying a default for the defaulting party to cure the default. (Checks Agreement § 12.1). In the event that the default is not substantially cured within 90 days following written notice of the default, the non-defaulting party can terminate the Checks Agreement only by providing 90 days written notice of termination. (*Id.*). Thus, even if your letter purported to identify a material default by Harland -- which it does not -- it would be a minimum of 180 days before the Checks Agreement could be terminated, and then only if Harland had not cured the default within the specified 90 day period. Thus, Compass Bank clearly cannot terminate the Checks Agreement at this time, and certainly not by June 22, 2004.

Thus, Compass Bank has no right to terminate the Checks Agreement. Your request that Harland cease operations on two-days notice, though legally ineffective with respect to Compass Bank's obligations, merits one note of caution. Please do not underestimate the costs associated with winding down operations under the Checks Agreement. In the event that Compass Bank were to fail to uphold its obligations under the Checks Agreement, the direct damage to Harland would be substantial. These damages would be substantially exacerbated if Harland were not permitted sufficient time to wind down operations under the Checks Agreement.

Under Georgia's version of the U.C.C., every contract imposes an obligation of good faith in its performance or enforcement. O.C.G.A. § 11-1-203. As we have stated, Harland intends to fully and in good faith comply with its obligations under the Checks Agreement for the full term of the Checks Agreement, and expects Compass Bank to do the same.

Sincerely,

*Daniel J. King* (w/permission)

Daniel J. King

**EXHIBIT 6**