UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOVEREIGN BANCORP, INC. and SOVEREIGN BANK, | ) ) ) ) | Civil Action No. 04-11631-EFH |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| JOHN H. HARLAND COMPANY, | ) ) | AMENDED COMPLAINT |
| Defendant. | ) ) ) | |

## INTRODUCTION

Plaintiff Sovereign Bancorp, Inc. ("Sovereign") acquired Seacoast Financial Services Corp. ("Seacoast") effective July 23, 2004 pursuant to an Agreement and Plan of Merger (the "Merger"), and Compass Bank For Savings ("Compass"), the wholly-owned subsidiary of Seacoast, was merged into Plaintiff Sovereign Bank ("Sovereign Bank"), the wholly-owned subsidiary of Sovereign. In connection with the Merger, Defendant John H. Harland Company ("Harland") has wrongfully sought to compel Sovereign to pay millions of dollars to Harland by claiming, improperly, that a purported agreement between Compass and Harland (the "Checks Agreement") requires Sovereign to purchase all of its check product requirements from Harland through June 30, 2007. Plaintiffs bring this action to seek declarations pursuant to M.G.L. c. 231A regarding the validity, enforceability and terms of the Checks Agreement, as well as multiple damages and attorneys' fees for Harland's unfounded, bad faith demands and tortious interference with Plaintiffs' advantageous business relations.

BOST1-835736-1

## PARTIES

1.      Plaintiff Sovereign is a Pennsylvania corporation headquartered at 2000 Market Street, Philadelphia, Pennsylvania.

2.      Plaintiff Sovereign Bank is a federally-chartered savings bank with a principal place of business at 1130 Berkshire Blvd., Wyomissing, Pennsylvania. At all relevant times hereto, Sovereign Bank was a wholly owned subsidiary of Sovereign.

3.      Prior to the Merger, Seacoast was a Massachusetts corporation with a principal place of business at One Compass Place, New Bedford, Massachusetts. Seacoast was the parent corporation of Compass.

4.      Prior to the Merger, Compass was a bank organized under the laws of the Commonwealth of Massachusetts, with offices located at One Compass Place, New Bedford, Massachusetts.

5.      Defendant John H. Harland Company is a Georgia corporation with a principal place of business at 2939 Miller Road, Decatur, Georgia. At all relevant times hereto, Harland was in the business of manufacturing and distributing personal and business check products, as well as other accessories, to the banking industry.

## FACTS COMMON TO ALL COUNTS

6.      Compass and Harland entered into a purported "Checks Agreement" on or about October 7, 2002, and are the only parties to said purported agreement. The Checks Agreement, signed by Compass in Massachusetts, contemplates the potential sale and delivery of check products to Compass in Massachusetts. Sovereign and Sovereign Bank are not parties to the Checks Agreement.

7.     Pursuant to the Checks Agreement, Compass purportedly agreed to "purchase from Harland all of *its* requirements" for certain check products through June 30, 2007.  (Emphasis added.)

8.     There is no provision in the Checks Agreement that actually obligates Harland to sell *any* checks to Compass, let alone meet *all* of Compass' requirements.  Under the Checks Agreement (e.g., at Section 2.2 of the Checks Agreement, and at Section 2.2 of the Schedule A thereto), the only "promise" Defendant Harland makes to Compass is to offer its goods at its discretion and at prices which it unilaterally retained the power to change.

9.     The Checks Agreement is a purported requirements contract which does not provide for the requisite obligation of Harland, i.e., Harland nowhere agrees to be bound to supply Compass with all of Compass' requirements.  If Harland were to decline to fill Compass' orders, Compass would be left with no meaningful remedy pursuant to the Checks Agreement.

10.    Sovereign never agreed to purchase from Harland its requirements for check products.  Rather, Sovereign Bank has a pre-existing contract with another check products provider, Deluxe Corporation ("Deluxe"), for its check products requirements.

11.    Sovereign and Seacoast entered into an Agreement and Plan of Merger dated as of January 26, 2004, as amended by Amendment to Agreement and Plan of Merger made April 12, 2004 (the "Merger Agreement").

12.    Pursuant to the Merger Agreement, Seacoast was merged with and into Sovereign, and Compass was merged with and into Sovereign Bank.  As a result of the Merger, Seacoast and Compass ceased to exist.

13.    The Merger closed on July 23, 2004.

14.    Although Sovereign Bank is not a party to the Checks Agreement, and hereby contests the validity of said purported agreement, Sovereign Bank had agreed to discuss with Harland the Checks Agreement in connection with the Merger.  Harland and Sovereign Bank entered into a Confidentiality Agreement dated April 14, 2004 so that Sovereign Bank could review and discuss with Harland the confidential information, if any, contained in the Checks Agreement.

15.    As part of its discussions with Harland, Sovereign Bank informed Harland that the operating systems of the former Compass Bank would be converted into the operating systems of Sovereign Bank on or about October 15, 2004, and inquired whether Harland could supply check products for the former Compass customers until that date.

16.    In an effort to solve the parties' dispute and to facilitate its desire to proceed with its business affairs, including the Merger, Sovereign sought to settle this matter through a buy out of the Checks Agreement.  Without waiving any of its rights to dispute Harland's claims and the validity of the Checks Agreement, Sovereign offered in good faith to negotiate with Harland the terms of such potential buy out.

17.    Instead of seeking to negotiate a settlement in good faith, Sarah King Bowen, Harland's Vice President and General Counsel, sent Sovereign a letter on or about June 9, 2004 demanding that Sovereign (i) purchase all of *Sovereign's* check product requirements from Harland through June 30, 2007, or (ii) pay Harland $14,268,298 dollars to be released from the Checks Agreement, said amount allegedly being derived from *Sovereign's* (and not Compass') check product requirements through June 30, 2007.  Further, the letter implies that if Sovereign makes additional bank acquisitions, Sovereign will be compelled to

4

require that the additional acquired banks obtain all their check products from Harland, or
Sovereign will have to pay Harland additional, future "Buyout Amounts."

18.    The Checks Agreement, by its terms, does not require Sovereign to purchase
its check product requirements from Harland. None of the Plaintiffs ever agreed that
Sovereign would be obligated to purchase its check product requirements from Harland.

19.    Indeed, to the extent it is a valid and enforceable agreement, which Plaintiffs
vigorously dispute, the Checks Agreement is limited to the check product requirements of
the former Compass branch offices.

**COUNT I**
**(Declaratory Relief Pursuant to M.G.L. c. 231A –**
**Lack of Mutuality Voids the Purported Checks Agreement)**

20.    Plaintiffs repeat and reallege each and every allegation contained in
Paragraphs 1 through 19 as if fully set forth at length herein.

21.    The Checks Agreement is a purported requirements contract which does not
provide for the requisite obligation of Harland, i.e., Harland nowhere agrees to be bound to
supply Compass with all of Compass' requirements.

22.    There is no provision in the Checks Agreement that actually obligates
Harland to sell *any* checks to Compass, let alone meet *all* of Compass' requirements. The
Checks Agreement merely describes, in various places, including Sections 5.1-5.4, certain
tasks Harland agrees to perform in the event it chooses to supply checks to Compass. If
Harland were to decline to meet Compass' requirements, Compass would be left with no
meaningful remedy pursuant to the Checks Agreement.

23.     Pursuant to Section 2.2 of the Checks Agreement, and Section 2.2 of the Schedule A thereto, the only "promise" Defendant Harland makes to Compass is to offer its goods at its discretion and at prices which it unilaterally retained the power to change.

24.     Defendant Harland's unilateral right to change the cost at which it will sell its products amounts to no more than an agreement by Harland to make future offers to Compass for the sale of its check products at such prices as Harland may then designate. Harland has made no "promise" to Compass sufficient to qualify as consideration for a legally enforceable requirements contract. Compass is not obligated to accept any such offer Harland may decide to extend.

25.     The Checks Agreement states, at Section 15.8, that it "shall be governed by the laws of the State of Georgia." The Checks Agreement lacks mutuality of obligation under the Uniform Commercial Code as adopted by the State of Georgia and is, accordingly, invalid and unenforceable. GA. CODE ANN., § 11-2-306 (2004).

26.     Pursuant to M.G.L. c. 231A, as there is an actual controversy between Plaintiffs and Harland with respect to the validity and enforceability of the Checks Agreement, Plaintiffs respectfully request that this Court declare the purported Check Agreement *nudum pactum* for want of mutuality, and thus invalid and unenforceable.

## COUNT II
### (Declaratory Relief Pursuant to M.G.L. c. 231A – Harland's Bad Faith Demand)

27.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 26 as if fully set forth at length herein.

28.     Harland's demand that Plaintiffs pay it $14,268,298, purportedly based upon Sovereign's check product requirements and premised upon the validity and enforceability of the Checks Agreement, was made in bad faith.

29.     Harland's bad faith demand constitutes a breach of its duty of good faith and fair dealing.

30.     Harland's bad faith demand discharges any purported obligations of Compass pursuant to the Checks Agreement.

31.     Pursuant to M.G.L. c. 231A, as there is an actual controversy between Plaintiffs and Harland with respect to the terms of the Checks Agreement, Plaintiffs respectfully request that this Court declare Harland to be in breach of its duty of good faith and fair dealing and, furthermore, declare that such breach by Harland discharges any purported obligations of Compass pursuant to the Checks Agreement, with no amounts due or owing to Harland for the period after the breach.

**COUNT III**
**(Declaratory Relief Pursuant to M.G.L. c. 231A –**
**Amount Owed, If Any, Is Limited to Compass Unearned Discounts)**

32.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 31 as if fully set forth at length herein.

33.     Harland has no right to recover under the Checks Agreement for the reasons set forth in Counts I and II, *supra.*

34.     If, however, the Court were to find the Checks Agreement to be valid and enforceable, and that Compass' obligations pursuant to said purported agreement had not been discharged by Harland's bad faith conduct (as Plaintiffs request in Counts I and II, *supra*, respectively), the amount owed to Harland is limited under the Checks Agreement to

7

the unearned discounts granted to Compass, which shall be no more than the aggregate difference between the wholesale prices actually charged to Compass and Harland's list prices. The total amount of these discounts is far less than the millions of dollars sought by Harland.

35.     The Checks Agreement purportedly requires Compass to "purchase from Harland all of its [i.e., Compass'] requirements" for certain check products through June 30, 2007.

36.     The Checks Agreement provides that neither Harland nor Compass shall be liable for "special, indirect, consequential or punitive damages." Harland is therefore not entitled to any damages in excess of the unearned discounts actually granted to Compass under the Checks Agreements.

37.     Sovereign is not a party to the Checks Agreement.

38.     The Checks Agreement does not require Sovereign to purchase Sovereign's check product requirements from Harland.

39.     None of the Plaintiffs ever agreed that Sovereign would be required to purchase Sovereign's check product requirements from Harland.

40.     Thus, if the Court were to find that the Checks Agreement is enforceable by Harland, the amount owed to Harland under the Checks Agreement is limited to the unearned discounts actually granted to Compass, minus an offset for any refunds, including any Marketing Allowances, due to Compass and owed by Harland pursuant to, without limitation, Section 1.1 of the Rider for Marketing Allowance to the Checks Agreement.

41.     Pursuant to M.G.L. c. 231A, as there is an actual controversy between Plaintiffs and Harland with respect to the amounts due, if any, under the Checks Agreement, Plaintiffs respectfully request that this Court declare that the amounts due, if any, shall not exceed the unearned discounts actually granted to Compass, minus an offset for any refunds, including any Marketing Allowances, due to Compass and owed by Harland pursuant to, without limitation, Section 1.1 of the Rider for Marketing Allowance to the Checks Agreement.

## COUNT IV
### (Tortious Interference with Advantageous Business Relationships)

42.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 41 as if fully set forth at length herein.

43.     Harland's outrageous demand for $14,268,298 dollars from Plaintiffs, based upon *Sovereign's* (not Compass') check product requirements constitutes tortious interference with the Plaintiffs' advantageous business relationships.

44.     At all relevant times hereto, Plaintiffs had a business relationship of economic benefit pursuant to the Merger Agreement.

45.     Plaintiffs also have one or more business relationships with third parties that are of economic benefit (e.g., Sovereign's checks contract with Deluxe).

46.     Harland has knowledge of Plaintiffs' business relationships.

47.     Harland intentionally and improperly interfered with Plaintiffs' business relationships through its unfounded, bad faith demand for $14,268,298 pursuant to the Checks Agreement, an amount to which it is not entitled.

48.     Harland's improper conduct has interfered with Plaintiffs' business relationships, and has caused Plaintiffs to suffer money damages.

COUNT V
(Unfair and Deceptive Trade Practices,
M.G.L. c. 93A, §§ 2, 11)

49.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 48 as if fully set forth at length herein.

50.     Harland is a business engaged in trade or commerce.

51.     In seeking $14,268,298 from Plaintiffs pursuant to the Checks Agreement, Harland engaged in unfair and deceptive trade practices prohibited by M.G.L. c. 93A, §§ 2 and 11, as Harland's demand in this regard is unfounded and made in bad faith. Harland made its demand for significant sums of money pursuant to the Checks Agreement and for the purpose of wrongfully compelling Sovereign to pay Harland.

52.     Harland's unfair and deceptive trade practices were willful and knowing.

53.     As a result of Harland's unfair and deceptive trade practices in violation of M.G.L. c. 93A, Plaintiffs have suffered money damages.

WHEREFORE, Plaintiffs demand judgment:

a.     Adjudging and declaring the purported Checks Agreement *nudum pactum,* as it is invalid and unenforceable due to lack of mutuality.

b.     In the event this Court declines to declare the Checks Agreement invalid and unenforceable for want of mutuality, adjudging and declaring that Harland breached its

duty of good faith and fair dealing under the Checks Agreement, and thereby discharged

Compass' obligations under said Checks Agreement;

      c.      In the event this Court declines to declare the Checks Agreement invalid and

unenforceable for want of mutuality, and declines further to declare that Compass'

obligations under the Checks Agreement were discharged by Harland's bad faith conduct,

adjudging and declaring that the Checks Agreement (i) does not require Sovereign to

purchase its check product requirements from Harland and (ii) applies, if at all, only to the

Compass bank branches as operated prior to the Merger; and, moreover, (iii) that pursuant

to the Checks Agreement, Compass is liable to Harland for only the unearned discounts

actually granted to Compass, minus any applicable refunds or offsets;

      d.      Adjudging and declaring that Harland tortiously interfered with Plaintiffs'

advantageous business relationships, and awarding Plaintiffs their actual damages;

      e.      Adjudging and declaring that Harland violated M.G.L. c. 93A, and awarding

Plaintiffs three times their actual damages and their costs and reasonable attorneys' fees;

      f.      Awarding Plaintiffs such other relief as the Court may deem just and

appropriate.

## JURY DEMAND

Plaintiffs claim a jury trial on all claims and issues so triable.

Respectfully submitted,

**SOVEREIGN BANCORP, INC. and
SOVEREIGN BANK,**

By their attorneys,

/s/ Lee M. Holland
Steven B. Rotman, Esq. (BBO# 558473)
John W. Steinmetz, Esq. (BBO# 568108)
Paula S. Bliss, Esq. (BBO# 652361)
Lee M. Holland, Esq. (BBO# 650617)
ROBINSON & COLE LLP
One Boston Place
Boston, MA  02108
(617) 557-5900

Dated: August 31, 2004

## CERTIFICATE OF SERVICE

I, Lee M. Holland, hereby certify that on this 31st day of August 2004 a copy of the

foregoing was faxed and mailed, postage prepaid, to:


Bruce E. Falby, Esq.
Steven J. Buttacavoli, Esq.
PIPER RUDNICK LLP
One International Place
21st Floor
Boston, MA 02110

Daniel J. King, Esq.
James N. Gorsline, Esq.
Robert C. Khayat, Jr., Esq.
KING & SPAULDING LLP
191 Peachtree Street
Atlanta, GA 30303

/s/ Lee M. Holland
Lee M. Holland, Esq. (BBO# 650617)