UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOVEREIGN BANCORP, INC., et al. ) | Civil Action No.: 04-11631-EFH |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN H. HARLAND COMPANY, ) | |
| ) | |
| Defendant. ) | |

### ANSWER TO JOHN H. HARLAND COMPANY'S COUNTERCLAIMS

Sovereign Bancorp, Inc., Sovereign Bank, Seacoast Financial Services Corp., and Compass Bank for Savings (collectively, "Counterclaim-Defendants") hereby answer John H. Harland Company's ("Harland") counterclaims as follows:

1. Counterclaim-Defendants admit the allegations of Paragraph 1.

2. Counterclaim-Defendants admit the allegations of Paragraph 2.

3. Counterclaim-Defendants admit the allegations of Paragraph 3.

4. Counterclaim-Defendants admit the allegations of Paragraph 4.

5. Upon information and belief, Counterclaim-Defendants admit the allegations of Paragraph 5.

6. Counterclaim-Defendants deny that jurisdiction is properly founded in this matter under 28 U.S.C. § 1332, diversity of citizenship. Sovereign Bank is a federally-chartered bank, and thus is not subject to federal jurisdiction based upon diversity of

citizenship. Counterclaim-Defendants admit that venue is proper in the Commonwealth of Massachusetts, but deny that this court has subject matter jurisdiction.

7. Counterclaim-Defendants admit that Compass Bank for Savings ("Compass") entered into the Checks Agreement with Harland on or about October 7, 2002, and that Compass is defined as the "Buyer" in the Checks Agreement. Counterclaim-Defendants deny that the Checks Agreement is attached as Exhibit 1 to the Complaint, but admit that a copy is attached as Exhibit 1 to Harland's Answer and Counterclaims.

8. Counterclaim-Defendants admit that Paragraph 8 partially quotes from § 2.1 of the Checks Agreement, but deny that Paragraph 8 cites to all relevant provisions of the Checks Agreement.

9. Counterclaim-Defendants admit that the Checks Agreement had an initial term of five years and was to continue in effect until June 30, 2007 unless terminated prior to that date pursuant to the provisions of § 12.1 or § 12.2 of the Checks Agreement.

10. Counterclaim-Defendants admit that Paragraph 10 partially quotes from § 14.1 of the Checks Agreement, but deny that Paragraph 10 cites to all relevant provisions of the Checks Agreement.

11. Counterclaim-Defendants deny that § 14.1 of the Checks Agreement obligates Sovereign Bancorp, Inc. or Sovereign Bank (collectively, "Sovereign") to purchase their check product requirements from Harland. The Checks Agreement is limited to the check product requirements for the Compass branch offices subject to the Checks Agreement.

12. Counterclaim-Defendants deny the allegations of Paragraph 12. Indeed, § 12.2 of the Checks Agreement expressly provides that:

2

> 12.2   As a material inducement to Harland to offer to Buyer wholesale prices discounted from Harland's list price during the term hereof, Buyer has agreed to use Harland as its primary supplier of check products pursuant to Section 2 of this Agreement.  <u>Notwithstanding any other provision hereof,</u> in the event this Agreement is <u>terminated for *any reason*</u> (other than pursuant to Section 12.1 for a uncured breach by Harland), or if Buyer breaches the provisions of Section 2, Buyer shall repay to Harland the unearned discounts granted to Buyer. . . .

13.   Counterclaim-Defendants deny the allegations of the first sentence of Paragraph 13.  Counterclaim-Defendants admit that the second sentence of Paragraph 13 partially quotes from § 12.1 of the Checks Agreement, but deny that Paragraph 13 cites to all relevant provisions of the Checks Agreement.

14.   Counterclaim-Defendants admit that § 11.1 of the Checks Agreement contains an indemnification provision, but deny that they have any obligation to indemnify Harland.

15.   Counterclaim-Defendants deny that Paragraph 15 sets forth an accurate or full quote of § 12.2 of the Checks Agreement.  Section 12.2 of the Checks Agreement provides that:

> 12.2   As a material inducement to Harland to offer to Buyer wholesale prices discounted from Harland's list price during the term hereof, Buyer has agreed to use Harland as its primary supplier of check products pursuant to Section 2 of this Agreement.  <u>Notwithstanding any other provision hereof,</u> in the event this Agreement is <u>terminated for *any reason*</u> (other than pursuant to Section 12.1 for a uncured breach by Harland), or if Buyer breaches the provisions of Section 2, Buyer shall repay to Harland the unearned discounts granted to Buyer.  The unearned discount for Check Products shall be the aggregate difference between the wholesale price actually charged to Buyer and Harland's list prices (as adjusted from time to time).  Buyer's obligation to repay the unearned discounts shall be in addition to any other remedies available to Harland <u>hereunder.</u>

(Emphasis added.) Section 10.1 of the Checks Agreement provides (as drafted by Harland) that:

> 10.1 Notwithstanding any other provision of this Agreement, neither Harland nor Buyer shall be liable to the other for special, indirect, consequential or punitive damages, even if the parties have knowledge of the possibility of such damages.

(Emphasis added.) Thus, the amounts owed to Harland under the Checks Agreement, if any, cannot exceed the unearned discounts actually granted to Compass under the Checks Agreement.

16. Counterclaim-Defendants admit that the Checks Agreement states that it shall be governed by the laws of the State of Georgia.

17. Counterclaim-Defendants deny the allegations of Paragraph 17.

18. Counterclaim-Defendants admit the allegations of Paragraph 18.

19. Counterclaim-Defendants admit the allegations of Paragraph 19.

20. Counterclaim-Defendants deny the allegations of Paragraph 20.

21. Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the allegations of Paragraph 21, and therefore deny such allegations.

22. Counterclaim-Defendants admit that Harland's Associate General Counsel sent Compass a letter dated February 23, 2004 regarding Seacoast's acquisition of Abington, and that Abington had an agreement with a check vendor other than Harland. Counterclaim-Defendants admit that this February 23 letter, which speaks for itself, sets forth Harland's faulty position that it was entitled to the checks business from the former Abington branches. Counterclaim-Defendants deny that they owe Harland any money or that they have any obligations to Harland with respect to the former Abington branches.

4

By way of further answer, Counterclaim-Defendants state that the former Abington branches are irrelevant to this dispute, as the Abington branches received no discounts from Harland, and have no obligations under the Checks Agreement.

23. Counterclaim-Defendants admit that the checks business for the former Abington branches has not been transferred to Harland, and deny the remaining allegations of Paragraph 23.

24. Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the allegations of Paragraph 24, and therefore deny such allegations. By way of further answer, Counterclaim-Defendants admit that Sovereign Bancorp, Inc. acquired Plaintiff Seacoast Financial Services Corp. ("Seacoast") pursuant to an Agreement and Plan of Merger, and that Plaintiff Compass, the wholly-owned subsidiary of Seacoast, was merged into Sovereign Bank, the wholly-owned subsidiary of Sovereign Bancorp, Inc.

25. Counterclaim-Defendants admit that Sovereign Bank became the successor in interest to Compass as a result of the merger, but deny that the Checks Agreement obligates Sovereign to purchase its check product requirements from Harland. The Checks Agreement is limited to the check product requirements for the Compass branch offices subject to the Checks Agreement. Counterclaim-Defendants admit the allegations in the second sentence of Paragraph 25.

26. Counterclaim-Defendants admit the allegations of Paragraph 26.

27. Counterclaim-Defendants admit that Harland claimed improperly that the Checks Agreement required Sovereign to purchase its check product requirements from Harland. Counterclaim-Defendants further admit that Harland sought improperly to have Sovereign transition from its exclusive checks provider, Deluxe, to Harland. Counterclaim-

5

Defendants deny that the Checks Agreement required Sovereign to purchase its checks product requirements from Harland, and deny that any actions by Harland in seeking to obtain Sovereign's business were in good faith.

28.  Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the allegations of Paragraph 28, and therefore deny such allegations. By way of further answer Counterclaim-Defendants admit that Sovereign does have an exclusive checks agreement with Deluxe, and deny that this agreement with Deluxe is soon to expire.

29.  Counterclaim-Defendants lack information sufficient to form a belief as to the truth of the allegations of Paragraph 29, and therefore deny such allegations. By way of further answer Counterclaim-Defendants admit that Sovereign does have an exclusive checks agreement with Deluxe, and deny that this agreement with Deluxe is soon to expire. Counterclaim-Defendants further deny the characterization of the merger that will take place later in 2004.

30.  Counterclaim-Defendants admit that Sovereign Bank offered in good faith to negotiate a buy out of the Checks Agreement based upon the terms of the Checks Agreement as they relate to the Compass branch offices subject to the Checks Agreement.

31.  Counterclaim-Defendants admit that Harland sent Sovereign Bank a proposed buyout letter dated June 9, 2004, but deny that this letter complied with Sovereign's request for a buyout offer based upon the terms of the Checks Agreement as they relate to the Compass branch offices subject to the Checks Agreement. Counterclaim-Defendants further admit that Harland's demand for a buy out of the Checks Agreement was in the outrageous and unfounded amount of $14,268,298 based upon its improper and faulty calculations as described in the second and third sentences of Paragraph 31.

6

Counterclaim-Defendants deny that they owe any money to Harland. If, however, the Court were to find that Compass has obligations under the Checks Agreement that have not been discharged (which Counterclaim-Defendants dispute), the amount owed to Harland is limited under the Checks Agreement to the unearned discounts granted to Compass, which is the aggregate difference between the wholesale prices actually charged to Compass and Harland's list prices. The total amount of these discounts is far less than the millions of dollars sought by Harland.

32.   Counterclaim-Defendants admit that on July 1, 2004 they commenced this action in Massachusetts state court, asserting claims for declaratory judgment, tortious interference with advantageous relations, and unfair and deceptive trade practices. Counterclaim-Defendants deny the remaining allegations in Paragraph 32.

33.   Counterclaim-Defendants admit that on July 20, 2004 Compass sent Harland a letter terminating the Checks Agreement effective as of July 22, 2004, and state that the letter provided proper notice in accordance with the terms of the Checks Agreement.

34.   Counterclaim-Defendants admit the allegations of the first sentence of Paragraph 34. Counterclaim-Defendants further admit that the July 21 letter, which speaks for itself, sets forth Harland's inaccurate and faulty position in this matter, and that Harland summarizes this inaccurate and faulty position in the second sentence of Paragraph 34. Counterclaim-Defendants deny that either the July 21 letter or the second sentence of Paragraph 34 accurately set forth the terms of the Checks Agreement, and deny that they breached any obligations to Harland.

35.     Counterclaim-Defendants admit that Compass sent Harland a letter dated July 22, 2004 in connection with the termination of the Checks Agreement, and deny all other allegations in Paragraph 35.

36.     Counterclaim-Defendants admit that Harland's counsel sent another letter dated July 23, 2004. Counterclaim-Defendants further admit that the July 23 letter, which speaks for itself, sets forth Harland's inaccurate and faulty position in this matter, and that Harland summarizes this inaccurate and faulty position in Paragraph 36. Counterclaim-Defendants deny that either the July 23 letter or Paragraph 36 accurately set forth the terms of the Checks Agreement, and deny that they breached any obligations to Harland. Counterclaim-Defendants admit that Compass has not withdrawn the letters of July 20 and 22, 2004.

37.     Counterclaim-Defendants admit the allegations in the first sentence of Paragraph 37. Counterclaim-Defendants further admit that the former Abington and Compass branches have been merged into Sovereign Bank, and will continue under the name Sovereign Bank once all systems are converted. Counterclaim-Defendants deny that Sovereign Bank is the "Buyer" under the Checks Agreement, and deny that Sovereign Bank is in breach of any obligations to Harland.

38.     Counterclaim-Defendants admit that Harland sent Sovereign Bank a letter dated July 29, 2004 in which Harland alleged improperly that Sovereign Bank was in default under the Checks Agreement, and in which Harland demanded improperly that Sovereign cure this purported default. Sovereign Bank denies that it is in default under the Checks Agreement.

8

## COUNT I

39. Counterclaim-Defendants repeat and reallege each and every response contained in Paragraphs 1 through 38 as if fully set forth herein.

40. Counterclaim-Defendants deny the allegations of Paragraph 40. Harland has sought improperly to claim that Sovereign is required to purchase its check product requirements from Harland under the Checks Agreement. Counterclaim-Defendants deny any such assertion. The Checks Agreement does not require Sovereign to purchase Sovereign's check product requirements from Harland. The Checks Agreement is limited to the check product requirements for the Compass branch offices subject to the Checks Agreement.

41. Counterclaim-Defendants admit that Sovereign is the successor in interest to Compass, but deny that Sovereign is required to purchase its check product requirements from Harland under the Checks Agreement. The Checks Agreement does not require Sovereign to purchase Sovereign's check product requirements from Harland. The Checks Agreement is limited to the check product requirements for the Compass branch offices subject to the Checks Agreement. Counterclaim-Defendants further deny the allegations in the second sentence of Paragraph 41.

42. Sovereign Bank admits that the Checks Agreement has been terminated, and that it has no obligations under the Checks Agreement. Counterclaim-Defendants deny the remaining allegations of Paragraph 42.

43. Counterclaim-Defendants admit that there is an actual controversy between Counterclaim-Defendants and Harland with respect to the Checks Agreement, deny all

remaining factual allegations of Paragraph 43, and deny that Harland is entitled to any of the relief requested herein.

## COUNT II

44. Counterclaim-Defendants repeat and reallege each and every response contained in Paragraphs 1 through 43 as if fully set forth herein.

45. Counterclaim-Defendants deny the allegations of Paragraph 45. Harland has sought improperly to claim that the Sovereign is required to purchase its check product requirements from Harland under the Checks Agreement. Counterclaim-Defendants deny any such assertion. The Checks Agreement does not require Sovereign to purchase Sovereign's check product requirements from Harland. The Checks Agreement is limited to the check product requirements for the Compass branch offices subject to the Checks Agreement.

46. Counterclaim-Defendants deny the allegations of Paragraph 46.

47. Counterclaim-Defendants admit that there is an actual controversy between Counterclaim-Defendants and Harland with respect to the applicability of the Checks Agreement to the former Abington branches, deny all remaining factual allegations of Paragraph 47, and deny that Harland is entitled to any of the relief requested herein.

## COUNT III

48. Counterclaim-Defendants repeat and reallege each and every response contained in Paragraphs 1 through 47 as if fully set forth herein.

49. Counterclaim-Defendants deny the allegations of Paragraph 49.

50. Counterclaim-Defendants admit that Count I of Harland's Counterclaim seeks declaratory relief, and deny the remaining allegations of Paragraph 50.

10

51.     Counterclaim-Defendants deny the allegations of Paragraph 51.

## COUNT IV

52.     Counterclaim-Defendants repeat and reallege each and every response contained in Paragraphs 1 through 51 as if fully set forth herein.

53.     Counterclaim-Defendants admit that Harland and Compass formerly had a business relationship, and deny the remaining allegations of Paragraph 53.

54.     Counterclaim-Defendants admit the allegations of Paragraph 54.

55.     Counterclaim-Defendants deny the allegations of Paragraph 55.

56.     Counterclaim-Defendants deny the allegations of Paragraph 56.

57.     Counterclaim-Defendants deny the allegations of Paragraph 57.

58.     Counterclaim-Defendants deny the allegations of Paragraph 58.

Regarding the unnumbered Paragraph beginning "WHEREFORE," Counterclaim-Defendants deny that Harland is entitled to any of the relief described in this Paragraph, including any of the relief described in subparagraphs a-f.

All allegations in Harland's Counterclaims not expressly admitted herein are denied. Counterclaim-Defendants state that the Checks Agreement is void and unenforceable, thus deny all allegations that state or imply otherwise.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Harland's Counterclaim, and each count thereof, fails to state a claim upon which relief can be granted.

11

### Second Affirmative Defense

The alleged agreement upon which Harland bases its Counterclaim is void and unenforceable, and each count of the Counterclaim fails, due to a lack of mutuality of obligation and/or lack of mutuality of consideration.

### Third Affirmative Defense

Counterclaim-Defendants did not violate any duty owed to, or right of, Harland.

### Fourth Affirmative Defense

At all relevant times, Counterclaim-Defendants acted in good faith.

### Fifth Affirmative Defense

Harland's counterclaims are barred, in whole or in part, by the doctrine of waiver, estoppel or laches.

### Sixth Affirmative Defense

Harland's counterclaims are not proper by the terms and conditions of the Checks Agreement.

### Seventh Affirmative Defense

Harland is not entitled to recover under the Checks Agreement because it breached material terms and conditions of the Checks Agreement.

### Eighth Affirmative Defense

Harland is not entitled to any declaratory relief or to any recovery under the Checks Agreement based on the doctrine of unclean hands.

### Ninth Affirmative Defense

Harland failed to mitigate its damages, if any.

### Tenth Affirmative Defense

Compass was entitled to terminate the Checks Agreement pursuant to § 12.2 of that Agreement:

> 12.2   As a material inducement to Harland to offer to Buyer wholesale prices discounted from Harland's list price during the term hereof, Buyer has agreed to use Harland as its primary supplier of check products pursuant to Section 2 of this Agreement. <u>Notwithstanding any other provision hereof,</u> in the event this Agreement is <u>terminated for *any reason*</u> (other than pursuant to Section 12.1 for a uncured breach by Harland), or if Buyer breaches the provisions of Section 2, Buyer shall repay to Harland the unearned discounts granted to Buyer. The unearned discount for Check Products shall be the aggregate difference between the wholesale price actually charged to Buyer and Harland's list prices (as adjusted from time to time). Buyer's obligation to repay the unearned discounts shall be in addition to any other remedies available to Harland <u>hereunder</u>.

(Emphasis added.) Section 10.1 of the Checks Agreement provides (as drafted by Harland) that:

> 10.1   Notwithstanding any other provision of this Agreement, neither Harland nor Buyer shall be liable to the other for special, indirect, consequential or punitive damages, even if the parties have knowledge of the possibility of such damages.

(Emphasis added.) Thus, the amounts owed to Harland under the Checks Agreement, if any, cannot exceed the unearned discounts actually granted to Compass under the Checks Agreement.

### Eleventh Affirmative Defense

Federal subject matter jurisdiction is lacking as Sovereign Bank is federally chartered and is thus not a citizen of any state for diversity purposes.

13

### Twelfth Affirmative Defense

The damages claimed by Harland, if any, were proximately caused by individuals or entities over which Counterclaim-Defendants had no control.

### JURY CLAIM

Counterclaim-Defendants Sovereign Bancorp, Inc., Sovereign Bank, Seacoast Financial Services Corp., and Compass Bank for Savings hereby demand a trial by jury on all issues so triable.

        Respectfully submitted,

        SOVEREIGN BANCORP, INC.;
        SOVEREIGN BANK; SEACOAST
        FINANCIAL SERVICES CORP.; and
        COMPASS BANK FOR SAVINGS,

        By their attorneys,

        /s/Paula S. Bliss
        Steven B. Rotman (BBO# 558473)
        John W. Steinmetz (BBO# 568108)
        Paula S. Bliss (BBO# 652361)
        ROBINSON & COLE LLP
        One Boston Place
        Boston, Massachusetts 02108
        (617) 557-5900
        (617) 557-5999 – FAX

Dated: September 24, 2004

## CERTIFICATE OF SERVICE

      I, Paula S. Bliss, hereby certify that on this 24th day of September, 2004, I served a true copy of the foregoing document via first-class mail, postage prepaid, upon the following:

| | |
|---|---|
| Bruce E. Falby | Daniel J. King |
| Steven J. Buttacavoli | James N. Gorsline |
| Piper Rudnick LLP | Robert C. Khayat, Jr. |
| One International Place, 21st Floor | King & Spalding LLP |
| Boston, MA 02110-2600 | 191 Peachtree Street |
| | Atlanta, Georgia 30303 |

                              /s/ Paula S. Bliss
                              Paula S. Bliss