# KING & SPALDING LLP

191 Peachtree Street
Atlanta, Georgia 30303-1763
www.kslaw.com

Daniel J. King
Direct Dial: 404/572-3397
Direct Fax: 404/572-5141
dking@kslaw.com

July 23, 2004

**VIA FACSIMILE
AND U. S. MAIL**

John W. Steinmetz
Robinson & Cole LLP
One Boston Place
Boston, MA 02108-4404

Re:  Dispute among Sovereign Bancorp, Inc. ("Sovereign Bancorp"), Sovereign Bank, Seacoast Financial Services Corp ("Seacoast"), Compass Bank for Savings ("Compass") and John H. Harland Company ("Harland")

Dear Mr. Steinmetz:

I am in receipt of your July 22, 2004 letter in which you claim that § 12.2 of the Checks Products Purchase Agreement (the "Checks Agreement"), entered into on October 7, 2002, by and between Harland and Compass, permits Compass to terminate that agreement at will. Your interpretation of the Checks Agreement is incorrect, and your clients' efforts to terminate the Checks Agreement to avoid the natural consequences of the pending merger and their strict contractual obligations is wrongful and without legal effect.

Contrary to your interpretation, § 12.2 of the Checks Agreement does not permit Compass to terminate the contract at will. Rather, it merely provides that one element of damages to which Harland is entitled in the event of a termination -- for example, in the event the contract is terminated due to a breach by Compass -- consists of a repayment to Harland of any unearned discounts granted to Compass. It does not, as you represent, permit Compass to terminate the Checks Agreement for convenience. Furthermore, § 12.2 is not a liquidated damages provision, and the repayment of credits under § 12.2 is not Harland's sole remedy for a breach of the Checks Agreement. Rather, it is clear under § § 10.1 and 12.2 that Harland retains the right to seek direct damages stemming from a breach. Indeed, § 12.2 specifically provides that Compass's "obligation to repay the unearned discounts shall be in addition to any other remedies available to Harland hereunder."

It is unfortunate that your clients have not seen fit to resolve this issue in a professional, businesslike manner, and instead have filed baseless claims against Harland in an apparent effort to strong-arm their way out of their obligations. We will protect and enforce Harland's rights under the Checks Agreement, though we urge that your clients reconsider the path that they have

**EXHIBIT 8**

ATLANTA • HOUSTON • LONDON • NEW YORK • WASHINGTON, D.C.

undertaken. As a result of the merger, all of Compass's obligations will be binding on any resulting entity, and your clients' current course of conduct places all of them at risk. Harland has not, and will not, hesitate to fully defend its rights and assert appropriate claims against your clients.

With respect to your contention that by proposing a buyout number Harland somehow breached the Checks Agreement and committed tortious conduct permitting termination of the Checks Agreement, you are simply and clearly incorrect. Not only is that contention legally unsupportable, Harland has at all times sought to properly resolve the issues presented by the merger of Compass and Sovereign Bank. It appears, however, that Sovereign believes that it can avoid the natural consequences of the merger by having Compass breach the Checks Agreement on the day before the merger is scheduled to close. While your clients have seen fit to accuse Harland of tortious interference with business relations, your clients' conduct is, in fact, exactly what the law concerning tortious interference is intended to protect against.

Both applicable law and the Checks Agreement are clear: if Compass is acquired, all of its obligations are binding upon the successor entity. As we have maintained, Harland intends to fully and in good faith comply with its obligations under the Checks Agreement for the full term of the Checks Agreement, and expects Compass Bank (and any successor entity) to do the same. While your clients' course of conduct thus far has evinced a lack of good faith, and while we will continue to protect Harland's interests, we continue to suggest that the appropriate representatives of Compass Bank (or Sovereign once the merger concludes) seek to resolve this dispute in a professional manner.

Sincerely,

Daniel J. King

**EXHIBIT 8**